**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

**RICKY LEE MCDEID,**

Petitioner,

v.

**MICHAEL O'KEEFE, Minnesota Commissioner of Human Services,**

Respondent.

Civil No. 02-31 (RHK/JGL)

**REPORT AND RECOMMENDATION**

APPEARANCES

Allan R. Poncin, Esq., for Petitioner

Angela M. Helseth, Esq., Assistant Attorney General, for Respondent

JONATHAN LEBEDOFF, United States Magistrate Judge

The above-entitled matter is before the undersigned Magistrate Judge of District Court on Petitioner Ricky Lee McDeid's Petition pursuant to 28 U.S.C. § 2254 for a Writ of Habeas Corpus by a Person in State Custody. The matter has been referred to the undersigned for a Report and Recommendation pursuant 28 U.S.C. § 636 and D. Minn. LR 72.1(c). For the reasons set forth below, the Court recommends that the petition be denied and the case be dismissed with prejudice.

MAR 28 2002
FILED
RICHARD D. SLETTEN, CLERK
JUDGMENT ENTD
DEPUTY CLERK

## I. FACTUAL AND PROCEDURAL BACKGROUND

Petitioner McDeid is under an Aitkin County District Court order of civil commitment to the Minnesota Sex Offender Program as a sexually dangerous person ("SPP") and a sexual psychopathic personality ("SPP"). Respondent Michael O'Keefe is the Commissioner of the Minnesota Department of Human Services, which operates the program at Moose Lake where McDeid is currently confined. McDeid filed his habeas petition on January 4, 2002, challenging the constitutionality of his civil commitment and seeking release from confinement.

On December 16, 1992, McDeid pleaded guilty to the following counts of criminal sexual conduct: one count of criminal sexual conduct in the second degree for sexually assaulting his fifteen-year-old, male cousin in 1984 and 1985; one count of criminal sexual conduct in the second degree for sexually abusing his nine-year-old nephew on several occasions between 1989 and 1991; one count of criminal sexual conduct in the second degree for sexually abusing his fifteen-year-old son in July 1991; and one count of criminal sexual conduct in the second degree for sexually abusing another son from 1989 to 1992, when the boy was between the ages of six and nine. McDeid was sentenced to seventy-eight months in prison.

McDeid was admitted to the Minnesota Correctional Facility ("MCF") at Stillwater on December 17, 1992, and he indicated his interest in

the sex offender program. On December 20, 1994, McDeid transferred to MCF-Lino Lakes and began the assessment/orientation phase of the sex offender program. In August 1996, McDeid was released from MCF-Lino Lakes on a work release program, but the release was revoked when he violated a crucial condition, namely that he have no contact with juvenile males. He had visited his sponsor's home when the sponsor's children were present. McDeid was released a second time on February 4, 1997, and one month later, he began a relationship with a woman who had two young sons. McDeid's release was restructured several times but was again revoked for violating the terms of the release. McDeid returned to prison on February 8, 1999 to serve the remainder of his sentence.

Prior to McDeid's release date, the State of Minnesota filed a petition for judicial commitment seeking to commit McDeid as an SDP and an SPP. The petition, dated April 2, 1999, described in detail McDeid's criminal conduct. (R. at 1-12.) The Honorable Lois J. Lang presided over a two-day trial on May 10 and 12, 1999. The court issued its Findings of Fact, Conclusions of Law, and Order for Commitment on July 22, 1999, and found that McDeid was an SDP and an SPP. (R. at 32-47.) The court therefore committed McDeid to the sex offender program for an indeterminate length of time. (R. at 52.) McDeid appealed his commitment to the Minnesota Court of Appeals, which affirmed the commitment. The Minnesota Supreme Court denied review, and

the United States Supreme Court denied McDeid's petition for a writ of certiorari.

## II. DISCUSSION

Habeas corpus is a federal remedy for a state prisoner's challenge to the legality of his or her detention. See 28 U.S.C. § 2254(a); Preiser v. Rodriguez, 411 U.S. 475, 485-86 (1973). Federal courts may entertain a habeas corpus petition only on the grounds that the prisoner's incarceration violates the United States Constitution or other federal law. See 28 U.S.C. § 2254(a); Wycoff v. Nix, 869 F.2d 1111, 1113 (8th Cir. 1989).

### A. Exhaustion of Remedies

A habeas corpus petition brought pursuant to 28 U.S.C. § 2254 may not be granted unless the petitioner demonstrates that he has exhausted his available state remedies with respect to every claim raised in the habeas petition. See 28 U.S.C. § 2254(b)(1). A claim is considered exhausted when the petitioner has afforded the highest state court a fair opportunity to rule on the factual and theoretical substance of the claim. See Ashker v. Leapley, 5 F.3d 1178, 1179 (8th Cir. 1993) (citing Picard v. Connor, 404 U.S. 270, 275-278 (1971)). Respondent concedes that McDeid has exhausted his claims.

### B. The Merits of the Petition

A § 2254 petitioner is entitled to habeas relief only if (1) the relevant state court decision or proceedings were "contrary to, or involved an

unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or (2) the decision "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(1), (2).

### 1. Likelihood of Future Harm or Dangerousness

McDeid's first and second grounds for relief are that his right to due process was violated because the facts in his case do not demonstrate a likelihood of future harm as an SPP or an SDP. McDeid contends that he completed sex offender and chemical dependency treatment programs and that he was released for two years in the community without reoffending. McDeid submits that this history should have outweighed the expert testimony presented at his commitment trial.

The Court construes McDeid's claim as one of insufficient evidence: that the facts in his case were insufficient to show a likelihood of future harm as an SPP or SDP. In Addington v. Texas, 441 U.S. 418 (1979), the Supreme Court held that the Fourteenth Amendment requires a "clear and convincing" standard of proof in civil commitment proceedings. See id. at 431-32. Thus, "the relevant question is whether, after viewing the evidence in the light most favorable to the [state] . . ., any rational trier of fact could have found" by clear and convincing evidence a likelihood of future harm as an SDP or an SPP. See Jackson v. Virginia, 443 U.S. 307, 319 (1979). This Court

dccms that a rational factfinder could have found that McDeid possessed a likelihood of future harm by clear and convincing evidence.

Minnesota law defines an SDP as follows:

> (a) A "sexually dangerous person" means a person who:
>
> (1) has engaged in a course of harmful sexual conduct as defined in subdivision 7a;
>
> (2) has manifested a sexual, personality, or other mental disorder or dysfunction; and
>
> (3) as a result, is likely to engage in acts of harmful sexual conduct as defined in subdivision 7a.
>
> (b) For purposes of this provision, it is not necessary to prove that the person has an inability to control the person's sexual impulses.

Minn. Stat. § 253B.02, subd. 18c. "Harmful sexual conduct" is defined as "sexual conduct that creates a substantial likelihood of serious physical or emotional harm to another." Id. § 253B.02, subd. 7a(a). The SDP statute "requires a finding of future dangerousness." See In re Linehan, 594 N.W.2d 867, 875 (Minn.) (citing Hendricks v. Kansas, 521 U.S. 346, 358 (1997)), cert. denied, 528 U.S. 1049 (1999).

An SPP is statutorily defined as:

> the existence in any person of such conditions of emotional instability, or impulsiveness of behavior, or lack of customary standards of good judgment, or failure to appreciate the consequences of personal acts, or a combination of any of these conditions,

> which render the person irresponsible for personal conduct with respect to sexual matters, if the person has evidenced, by a habitual course of misconduct in sexual matters, an utter lack of power to control the person's sexual impulses and, as a result, is dangerous to other persons.

Id. § 253B.02, subd. 18b. Like the SDP statute, the state is required to show future dangerousness. See Matter of Linehan, 518 N.W.2d 609, 614 (Minn. 1994).

The following factors are indicative of future dangerousness:

> (a) the person's relevant demographic characteristics (e.g., age, education, etc.); (b) the person's history of violent behavior (paying particular attention to recency, severity, and frequency of violent acts); (c) the base rate statistics for violent behavior among individuals of this person's background (e.g., data showing the rate at which rapists recidivate, the correlation between age and criminal sexual activity, etc.); (d) the sources of stress in the environment (cognitive and affective factors which indicate that the person may be predisposed to cope with stress in a violent or nonviolent manner); (e) the similarity of the present or future context to those contexts in which the person has used violence in the past; and (f) the person's record with respect to sex therapy programs.

Id. The United States Supreme Court also requires a finding of future dangerousness before a person classified as an SDP or SPP can be civilly committed. See Kansas v. Hendricks, 521 U.S. 346, 357-58, 360 (1997).

In the present case, the-trier-of-fact considered the testimony of two court-appointed psychological examiners, Dr. Rosemary Linderman and Dr. Douglas Fox, who concluded that McDeid was "highly likely" to reoffend in

the future. (R. at 233, 298, 303.) In accordance with the Linehan factors, the examiners considered McDeid's demographic characteristics including childhood, education, and work history. (R. at 43, 233, 278, 287, 299.) The base rate statistics for individuals with demographic characteristics similar to McDeid's suggested a higher rate of recidivism than other sex offenders, reoffending over a longer period of time, and a higher number of victims. (R. at 234-35.) A strong consideration was that McDeid was sexually abused as a child, which indicated that he would be less likely to control his sexual impulses later in life. (R. at 287-88.) Thus, there was not an inverse correlation between age and criminal sexual activity. In addition, Dr. Fox testified that child molesters are able to commit sexual offenses such as fondling despite age-related health problems, as opposed to rapists, who may become physically incapable of offending with age. (R. at 236.) These first two Linehan factors weigh in favor of finding a likelihood of future dangerousness.

McDeid has an extensive history of violent behavior, considering his frequent sexual abuse of seven young boys from 1965 to 1991. ( R. at 34, 43.) McDeid sexually assaulted his younger uncle, who was ten or eleven years old, on three occasions in 1965. (R. at 34.) In 1977, McDeid sexually assaulted his younger cousin, who has cerebral palsy. (R. at 35.) In 1984, McDeid performed oral sex on his eight-year-old nephew. (R. at 35.) In 1984 and 1985, McDeid fondled and performed oral sex on his fifteen-year-old

cousin after providing him with alcohol. (R. at 36.) Between 1989 and 1991, McDeid sexually assaulted his nine-year-old nephew on multiple occasions. (R. at 37.) During the same period, McDeid sexually assaulted one of his sons, who was between the ages of six and nine years old, once or twice a week. (Id.) In 1991, McDeid fondled and performed oral sex on his fifteen-year-old son. (R. at 38.) The abuse was also relatively recent, occurring up until he was charged with the sexual assaults. The trier-of-fact was entitled to weight this factor in favor of future dangerousness.

As to sources of stress in the environment, Dr. Fox testified that McDeid has an utter lack of control over his behavior, which indicated he would act irresponsibly with respect to sexual matters. (R. at 214, 215-16.) Dr. Linderman concurred that McDeid could not exercise adequate control over his sexual impulses. (R. at 291.) However, Dr. Fox also noted that McDeid handled stress fairly well. (R. at 237.) Thus, this factor does not fully support a finding of future dangerousness.

The similarity of present or future contexts and past contexts is accentuated by McDeid's tendency to "groom" his victims, a behavior he displayed during his supervised release. (R. at 216, 282-83.) In addition, McDeid expressed a belief that he could safely have contact with minors and would be a good stepfather, which indicated he would place himself in contexts similar to those in which he sexually abused juveniles in the past. (R. at 216-

17.) During his supervised release, McDeid began a relationship with a woman who had two young sons. (R. at 230, 263, 273-74.) Dr. Fox testified that if McDeid placed himself in such situations after his term of incarceration, he would have a higher likelihood of reoffending. (R. at 238.) This factor weighs in favor of finding that McDeid possessed future dangerousness.

The final factor indicative of future dangerousness is McDeid's record with respect to sex therapy programs, and McDeid advances this factor in support of his habeas petition.[1] Dr. Fox described McDeid's quality of participation in such programs as "staggered," meaning his progress was interspersed with minor setbacks and defensiveness. (R. at 240-41.) Dr. Fox also described McDeid's participation in the out-patient program as "disturbing" in that the program was more difficult for him than it should have been. (R. at 241-42.) Dr. Friberg, who performed a psychological analysis of McDeid presumably during the program, questioned whether McDeid would be able to refrain from reoffending over a long period of time. (R. at 241.) Finally, Dr. Linderman testified that McDeid "can say the right things" and "imitate empathy," which indicated that he did not gain insight into his behavior during treatment. (R. at 285-86.) Although McDeid did complete the sex offender

---

[1] McDeid also mentions that he completed a chemical dependency treatment program, but this is not a factor relevant to future dangerousness as a sex offender. Moreover, Dr. Linderman opined that McDeid's drug and alcohol use did not cause his behavior but was his excuse for it. (R. at 291-94.)

program, his progress and lack of insight weigh in favor of finding future dangerousness.

Also of particular significance to McDeid is that he did not reoffend during his supervised release. Dr. Fox considered this point, but he concluded that the time period of release (two years) was too short to indicate that McDeid could control his sexual impulses. (R. at 225.) Dr. Fox based his opinion on studies showing that the recidivism rate increases with time. (Id.) In addition, Dr. Fox noted that McDeid was closely supervised and prevented from having contact with minors during his release. (R. at 226.) Of great concern to Dr. Fox were McDeid's attempts to nevertheless make contact with and reestablish relationships with minors, which was in violation of the terms of the release. (R. at 226, 243, 265, 276-77.) Dr. Fox clearly stated that when McDeid has "been in the community, he's again shown behaviors that are similar to his offense pattern." (R. at 245.) Similarly, Dr. Linderman minimized the fact that McDeid did not reoffend when released, noting that the time period was relatively brief and that McDeid repeatedly violated the conditions of his release in other ways. (R. at 296.)

In conclusion, after viewing the evidence in the light most favorable to Respondent, the Court finds that a rational trier of fact could have found by clear and convincing evidence that McDeid posed a likelihood of future

dangerousness as an SDP and an SPP. There is sufficient evidence to support the court's decision, and McDeid's right to due process was not infringed.

### 2. Article III Standing to Challenge the SDP Statute

McDeid next contends that the SDP statute violates due process because it does not narrow the class of persons subject to confinement to those who are unable to control their dangerousness and sexual impulses. However, even if the SDP act is unconstitutional, McDeid lacks Article III standing to challenge the constitutionality of the statute.

McDeid was also committed as an SPP, which the Court found constitutional in Part II.B.1. An individual who is indeterminately, civilly committed as both an SDP and an SPP may not meet the case-or-controversy requirement of Article III, § 2, of the United States Constitution. In Ayers v. Doth, 58 F. Supp. 2d 1028 (D. Minn. 1999), the petitioner made an identical argument to McDeid's: that the SDP Act was unconstitutional because it does not require proof of an inability to control one's impulses. See id. at 1030. Like McDeid, petitioner Ayers was civilly committed as both an SDP and an SPP under Minnesota law. See id. at 1031. Relying on the concurrent sentence doctrine, the court found that the issuance of a writ of habeas corpus based on a challenge to the SDP statute would have no effect on Ayers' term of confinement and would effect no collateral legal consequences. See id. at 1034. That is, even if the writ issued, Ayers would nonetheless remain indefinitely

incarcerated as an SPP. Consequently, Ayers could not show an actual injury which would likely be redressed by issuing the writ, which is required for Article III standing. See id. at 1035.

Similarly, assuming arguendo that McDeid is unconstitutionally committed under the SDP statute, it would have no effect on his term of confinement. McDeid would remain confined indefinitely as an SPP. Accordingly, the Court finds that McDeid has failed to show an actual injury redressable by issuing a writ of habeas corpus, and he therefore lacks Article III standing to challenge the SDP statute.

**3. Substantive Due Process**

Even if McDeid had standing to challenge the SDP statute, however, the Court finds that this aspect of the petition should be denied on the merits. Relying on Kansas v. Hendricks, 521 U.S. 346 (1997), McDeid asserts that the SDP statute violates substantive due process because it does not restrict the class of individuals subject to confinement to those who are unable to control their dangerousness and sexual impulses.

This precise issue was considered by In re Linehan, 594 N.W.2d 867 (Minn.), cert. denied, 528 U.S. 1049 (1999). The Minnesota Supreme Court found that Minnesota's SDP statute met the requirements set forth in Hendricks, in which the United States Supreme Court upheld Kansas' civil commitment statute on substantive due process grounds. See id. at 875-76

(citing Hendricks, 521 U.S. at 358). The Linehan court acknowledged that, unlike the Kansas statute, the Minnesota statute explicitly declares that "it is not necessary to prove that the person has an inability to control the person's sexual impulses." See id. at 874 (quoting Minn. Stat. § 253B.02, subd. 18c(b)). This discrepancy was questioned given Hendricks' requirement that involuntary civil confinement be limited to "those who suffer from a volitional impairment rendering them dangerous beyond their control." 521 U.S. at 358. The Minnesota Supreme Court found that the Minnesota SDP statute squared with Hendricks because the act mandated "civil commitment of sexually dangerous persons who have engaged in a prior course of sexually harmful behavior and whose present disorder or dysfunction does not allow them to adequately control their sexual impulses, making it highly likely that they will engage in harmful sexual acts in the future." In re Linehan, 594 N.W.2d at 876. The United States Supreme Court denied certiorari. See Linehan v. Minnesota, 528 U.S. 1049 (1999).

This Court must view the SDP statute "as though it read precisely as the highest court of the State has interpreted it." Minnesota ex rel. Pearson v. Probate Court, 309 U.S. 270, 273 (1940). Accordingly, in relevant part, the SDP statute defines the class of persons fit for confinement as individuals who are unable to control their dangerousness and sexual impulses because of their present disorder or dysfunction. See In re Linehan, 594 N.W.2d at 876. To

satisfy substantive due process, a civil commitment statute must couple "proof of dangerousness with the proof of some additional factor, such as a 'mental illness' or 'mental abnormality.'" Hendricks, 521 U.S. at 358 (citations omitted). It is the existence of a "mental abnormality" or "personality disorder" factor in the statute that narrows the class of persons fit for involuntary commitment "to those who suffer from a volitional impairment rendering them dangerous beyond their control." See id. In other words, Hendricks does not require a separate statutory provision relating to lack of control, but declares that the volitional component may be subsumed in the "mental abnormality" or "personality disorder" factor. Thus, the holding in Linehan, which expressly limits the class of individuals subject to confinement to those who are unable to control their dangerousness and sexual impulses because of their present disorder or dysfunction, squares with Hendricks. McDeid has not met his burden to show that the Minnesota SDP statute violates clearly established federal law as determined by the United States Supreme Court.

Moreover, the Minnesota Supreme Court has interpreted the statutory phrase "it is not necessary to prove that the person has an inability to control the person's sexual impulses," Minn. Stat. § 253B.02, subd. 18c(b), to mean only that proof of an utter inability to control is not required. In re Linehan, 594 N.W.2d at 875. This interpretation conforms with Kansas v. Crane, 122 S. Ct. 867 (2002), in which the Supreme Court established that

Hendricks does not require the state to show that the individual totally or completely lacks control over his sexual impulses. See id. at 870. Thus, although Crane was not decided prior to McDeid's commitment proceedings, it is clear that the Minnesota SDP statute comports with substantive due process in this respect as well.

Based upon the above, and upon all the files, records, and proceedings herein, **IT IS HEREBY RECOMMENDED** that Petitioner Ricky Lee McDeid's Petition pursuant to 28 U.S.C. § 2254 for Writ of Habeas Corpus by a Person in State Custody (Doc. No. 1) be **DENIED** and the matter be **DISMISSED WITH PREJUDICE**.

Dated: March 28, 2002

JONATHAN LEBEDOFF
United States Magistrate Judge

Pursuant to D. Minn. LR 72.1(c)(2), any party may object to this Report and Recommendation by filing with the Clerk of Court and serving all parties by April 15, 2002, a brief containing written objections which specifically identify the portions of the Report or Recommendation to which objection is being made and the basis for the objections. A party may respond to the

objecting party's brief within ten days after service thereof. All briefs filed under this rule shall be limited to ten pages. A District Judge shall make a de novo determination of those portions to which objection is made. Failure to comply with this procedure shall operate as a forfeiture of the objecting party's right to seek review in the United States Court of Appeals for the Eighth Circuit.